FILED DEC 1 '20 AM 8:19 USDCALS

In the United States District Court
Southern District Of Alabama

20cv-581-CG-N

Name of Plaintiff

Darrin D. Miller

VS

Turner Industries Group LLC.

Complaint

Wrongfully terminated due to discrimination.

Darrin D. Miller
242 E Haig St.
Prichard, AL. 36610

Turner Industries Group LLC
8687 United Plaza Blvd
Baton, Rouge, LA 70809

If you need Character Witness or Work Ethics
For the last sixteen years there. Contact.

Kenny Davis — Turner Supply.
Booker Stewart — Shell Contracting
Bubba Bykes — Turner / Shell

 **TURNER INDUSTRIES**



EEOC Mobi⋯

APR 0 2 2019

RECEIVED

February 22, 2019

Darrin D. Miller
242 E Haig St.
Prichard, Alabama 36610

　　　　　　Re: Turner Industries Group, LLC.
　　　　　　Job Site: Shell Chemical/Saraland, Alabama

Dear Mr. Miller,

This letter is in response to the wrongful termination complaint you filed with the Employee Relations Department of Turner Industries on February 19, 2019.

For your information, Employee Relations is a neutral evaluator of certain workplace issues and disputes. Specifically, Employee Relations is responsible for addressing and resolving internal complaints of discrimination, harassment (including sexual harassment), and unfair treatment on the basis of race, color, national origin, sex, age, religion, disability, veteran status or other protected group status.

During your call with the Employee Relations Department on February 19, 2019, you reported that on February 14, 2019, Site Manager, David McAllister, wrongfully terminated you for violation of company policy, while working as a scaffolding foreman at the Shell job site in Saraland, Alabama.

You were allegedly terminated for no reason. On February 12th, multiple crew members went to McAllister, Scaffolding General Foreman, Johnnie Halford and Site Safety Manager, Toma Back, and they falsely accused you of ignoring stop work authorities, while working on an assignment in the 220-vacuum tower. Your crew members never told you to stop work as they alleged. Halford and the crew members allegedly stuck together because they wanted someone else in your position.

On the afternoon of February 12th, Halford, assigned your crew, Scaffolding Foreman, Tim Wiggins and Scaffolding Foreman, Justin Reed's crew to work on a demolition assignment in the 220-vacuum tower. You declined the help of the other crews but Halford assigned them to work with you anyway.

You obtained the required permit and you completed a JSA before you began the demolition work. While demoing, you noticed a way to modify the scaffold deck, so a piping crew could begin working. Before you began modifying the scaffold deck, you notified the operator. The operator allegedly told you to go ahead and write the modification work on the permit you already had. You told crew members that you got with the operator and he said to write the additional work on the permit. Multiple crew members allegedly told you, "[w]ell we don't know" You replied, "[i]t's on paper...if you don't want to help...go ahead...because we got this".

After completing the assignment, you heard that crew members had reported to management that you ignored their stop work authority. If a crew is going to stop work, they need to get together with their foreman, notify the foreman that they are going to stop work and tell the foreman what is wrong. No one ever told you to stop working as they reported to management.

One of your crew members, Rhea (last name unknown), allegedly tried to speak on your behalf and inform Halford, McAllister and Back that the crew never told you to stop working. However,

Page 2
Darrin D. Miller

they didn't listen to Rhea. There was also a pipefitter in the area, name unknown, who witnessed that your crew never told you to stop working.

On February 14th, McAllister called a meeting with you and Back. During the meeting, McAllister informed you that you were being terminated for disregarding multiple stop work authorities from your crew members, for a permit violation and for staging something. You attempted to explain to McAllister that crew members never told you to stop working and that the operator could verify that he told you to add the modification work to the permit you already had. McAllister wasn't interested in anything you had to say. You are not sure what you allegedly staged but you didn't ask any questions on that. You thanked McAllister and Back for the time you worked at that site and you left.

In addition, others have allegedly violated lock-out/tag-out (LOTO) and cell phone policies but they weren't terminated. You do not understand why you were terminated and those individuals weren't.

You worked for Turner for sixteen years without any issues. Others have been brought in over the years and placed into supervisory roles that you were never considered for. Most recently, the scaffolding general foreman position was awarded to Halford over you. It's allegedly a buddy-buddy system at that site.

Our investigation into your complaint is complete. During the investigation this office consulted with Site Manager, David McAllister. We also reviewed numerous witness statements and other documentation.

The information this office reviewed supports that on February 12, 2019, multiple crew members initiated their stop work authority for improper building of a scaffold and for violation of the permit while working in the 220-vaccum tower. The permit Operations issued to your crew was for demolition work only. Multiple witness statements support that after two crew members pulled their stop work authority cards, you continued working.

Multiple witness statements further support and by your own admission to this office, you told your crew if they didn't want to do the work they could go work somewhere else; as you continued working. You continued to work until Scaffolding General Foreman, Johnnie Halford, came to your work area and instructed you to stop.

Your failure to adhere to stop work authority procedures and your failure to adhere to permit procedures are significant safety violations that were found to be against site policy and against Turner policy. While working as a foreman it was your responsibility to ensure the safety of your crew and to ensure that your crew adhered to Turner policies and to site policies.

In addition, witness statement support that on two different occasions, you attempted to intimidate two of your crew members, when you asked them to provide false statements to management. This office found your behavior unethical and in violation of Turner policy.

Regarding the allegation that others have committed safety violations, but they were not terminated, the information McAllister provided to this office supports that during January of 2018, appropriate corrective action was taken against an employee for a cell phone violation. Per McAllister the violation didn't rise to the level of termination because the employee didn't bring the cell phone into an operating unit.

Also, per McAllister, during February of 2019, a pipefitter leadman wasn't locked out during a task. Per McAllister, according to Shell LOTO procedure, the leadman was the "Permit Holder",

---

not an "Affected Employee", because the leadman wasn't physically performing work on the equipment that was locked out. The leadman was supervising the crew members who were performing the work on the locked-out equipment. Even though it wasn't necessarily required for the leadman to lock out, it is best practice. Maintenance Superintendent, Jimmy Farmer, coached the leadman to be sure he is locked out in the future when his crew is performing LOTO work.

As for the allegation that Halford was awarded the scaffolding general foreman position over you, McAllister verified that he evaluated you and Halford for the position. McAllister consulted with Projects Superintendent, Kenny Davis, and he reviewed yours and Halford's credentials. McAllister determined that Halford was the most qualified for the job.

The information this office reviewed further supports that following field evaluations, McAllister counseled you on multiple occasions, regarding areas you needed to improve upon while working as a foreman. There were multiple times McAllister asked you to take care of safety concerns such as; nails being left in material and color coding SRL/YOYO's that weren't completed in a timely manner as requested. In addition to nails being left in the material, specifically, scaffold toe boards, there was a safety incident in your crew, where a nail became entangled in a scaffold netting, causing a toe board to fall and contact a team member. Furthermore, you were responsible for supervising a crew when an OSHA Recordable incident occurred. Per McAllister, all these issues were taken into consideration when he made the decision not to promote you.

Based upon the information this office reviewed we were unable to find information to support that you were mistreated while working at the Shell Chemical job site in Saraland, Alabama. The information this office reviewed supports you violated multiple site and Turner policies on February 12, 2019. As a result, Site Manager, David McAllister made the decision to terminate your employment for violation of company policy on February 14, 2019. You failed to perform at the level expected of a member of management. We are upholding your termination.

Since your grievances have been addressed, this office will close its file on the matter. If you require additional assistance, please do not hesitate to contact me at (225) 214-2130.

Sincerely,

Julie Rabun

Julie Rabun
Employee Relations Specialist
Phone: 800.288.6503 ext. 2130
Email: jrabun@turner-industries.com

Darrin Miller                                                10/29/2020


In order for me to request your EEOC file and investigate your matter further, I will need your authorization. Please respond sign here that you agree to the following statement:


I hereby authorize Abby Richardson to request my EEOC file in order to investigate my potential case.  I understand that she has not agreed to represent me in Court, that I alone must abide by any applicable filing deadlines.

# STATE OF ALABAMA

**DEPARTMENT OF LABOR**
**UNEMPLOYMENT COMPENSATION DIVISION**
**MONTGOMERY, ALABAMA  36131**

BEN11
REV. (07-2015)

| NOTICE OF DETERMINATION |

DARRIN D MILLER
242 E HAIG ST
MOBILE          AL  36610

| | | |
|---|---|---|
| **SSN:** | XXX-XX-5438 | **C.D.:** 02/17/19 |
| **O-C:** 6001 | | **PROG:** 01 |
| **DATE MAILED:** | 03/13/19 | |
| **CLAIMS INQUIRY:** | | |
| 800-361-4524 | | |

You have been disqualified or determined ineligible for benefits as indicated below:
FROM: 02/17/19        TO: INDEFINITE
**SECTION OF LAW:** 25-4-71
**ISSUE:** Unemployment Status

You are not unemployed as you are currently employed with TURNER INDUSTRIES LLC E. You will remain disqualified until such time that you are no longer employed and meet all other eligibility requirements. Should you become unemployed in the future, and wish to reopen your claim, telephone 1-866-234-5382.

**RIGHT TO APPEAL:** You have the right to appeal this determination; however, your appeal rights end 15 calendar days from the date of this notice if mailed, or 7 days if delivered (see DATE MAILED or DELIVERED above.) You may obtain information about your claim by telephoning the claims inquiry line shown above, however, all appeals MUST be filed by a letter addressed to the Hearing and Appeals Division, 649 Monroe Street, Montgomery, AL. 36131, or by fax to 334-956-5891. The appeal must be received within the prescribed time whether filed by mail or fax. Should the last calendar day for filing an appeal fall on a Saturday, Sunday or state holiday or other office closing, the period is extended to the next business day. If you do appeal, and remain unemployed, you should continue to file weekly claims on time pending the outcome of the appeal. Payments can be made only for eligible weeks for which timely claims have been filed. If you are unemployed when the period of disqualification or ineligibility ends and wish to reopen your claim, telephone 1-866-234-5382 during the week after the disqualification has ended. If payments have been made to you for weeks during the period(s) of disqualification or ineligibility indicated above, you will receive a Notice of Determination of Overpayment advising you of the amount to be repaid.

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To:  **Darrin Miller**
    **242 East Haig Street**
    **Prichard, AL 36610**

From:  **Mobile Local Office**
    **63 S Royal Street**
    **Suite 504**
    **Mobile, AL 36602**

|  | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 425-2019-00636 | **ARLENE A. GORCEY,** **Investigator** | **(251) 690-2177** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]   Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Erika LaCour*

**Erika LaCour,**
**Local Office Director**

09-01-2020

(Date Mailed)

Enclosures(s)

cc:  **Max C. Marx, Esq.**
    **Assistant General Counsel**
    **TURNER INDUSTRIES GROUP, L.L.C.**
    **Legal Department**
    **8687 United Plaza Boulevard**
    **Baton Rouge, LA 70809**



**U.S. Equal Employment Opportunity Commission**
**Mobile Local Office**

63 S Royal Street
Suite 504
Mobile, AL 36602
(251) 690-2590
TTY (251) 690-2579
Fax: (251) 690-2581

Respondent: TURNER INDUSTRIES
EEOC Inquiry No.: 425-2019-00636

April 12, 2019

Darrin Miller
242 East Haig Street
Prichard, AL 36610

Dear Mr. Miller:

This is with reference to your recent inquiry (an office visit, phone call, correspondence, or electronically submitted intake questionnaire) in which you alleged employment discrimination by the above-named respondent. The information provided indicates that the matter complained of is subject to the statute(s) checked off below:

[ X ]    Title VII of the Civil Rights Act of 1964 (Title VII)

[ ]    The Age Discrimination in Employment Act (ADEA)

[ ]    The Americans with Disabilities Act (ADA)

[ ]    The Equal Pay Act (EPA)

[ ]    The Genetic Information Nondiscrimination Act (GINA)

The attached EEOC Form 5, Charge of Discrimination, is a summary of your claims based on the information you provided. To enable proper handling of this action by the Commission you should:

(1)  Review the enclosed charge form and contact me if corrections are needed.

(2)  Sign and date the charge in the bottom left hand block where I have made an "X".

(3)  Return the signed charge to this office.

These steps are necessary if you wish to file a charge. No charge has been filed because the correspondence you submitted was not signed. Since charges should be filed within the time limits imposed by law, please complete these steps as soon as possible. Please call me at the number listed below if you have any questions. If you have to call long distance, please call collect.

IF WE DO NOT RECEIVE YOUR SIGNED CHARGE WITHIN 30 DAYS OR HEAR FROM YOU WITHIN 30 DAYS, WE WILL ASSUME THAT YOU DECIDED NOT TO FILE A CHARGE OF DISCRIMINATION WITH EEOC.

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.   **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2.   **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.   **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.   **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.   **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

Please use the "EEOC Charge No." listed at the top of this letter whenever you call us about this charge. Please also notify this office of any change in address or of any prolonged absence from home. Failure to cooperate in this matter may lead to dismissal of the charge.

Please also read the enclosed brochure, "What You Should Know Before You File A Charge With EEOC," for answers to frequently asked questions about employee rights and the EEOC process.  If you have any questions, please call me at the number listed below. If you have to call long distance, please call collect.

Sincerely,

JOHN J. BYRD
Investigator
(251) 690-2409

Office Hours: Monday – Friday, 8:00 a.m. - 4:00 p.m.
www.eeoc.gov

Enclosure(s)
    Copy of EEOC Form 5, Charge of Discrimination
    Copy of EEOC Online Charge Status System Tip Sheet

# EEOC Online Charge Status System Tip Sheet

Find out about the status of your charge of discrimination any time, day or night, using the EEOC Online Charge Status System.   The system is available for charges that were filed on or after September 2, 2015.

- Access the Online Charge Status System via this link https://publicportal.eeoc.gov/portal/ or select the "My Charge Status" button on www.eeoc.gov.

- Enter your assigned charge number (found in the upper right hand corner on your discrimination charge form) and your zip code (as it appears on your discrimination charge form) to sign in.  (If you have provided a new address and zip code to EEOC, use the new zip code.) You will be asked to enter a security code displayed in a box on the sign-in screen that is provided to assure additional security for the system.

- After you have signed into the Online Charge Status System, you will see the screen display pictured below. The numbers on the screen shot refer to the features explained beneath it.*



1. A quick view of the stage in the process at which your charge is currently.
2. The name and contact information of the EEOC staff member assigned to your charge or a note that your charge is pending assignment.
3. The EEOC office (and its address) that is handling your charge.
4. The specific actions the EEOC has taken on your charge, numbered sequentially, and the date of each action. (hold cursor over each action to read further details about the task).
5. The general steps in the process, with additional explanations that display when you hold your cursor over a colored box.
6. The range of next steps possible in the investigative process, which pops up when the cursor is held over this box.
7. The flow of the overall investigative process, which comes up when you click on this box.
8. Ends your session on the Online Charge Status System.

*Not every stage of the enforcement process will display for every charge, as each charge follows the process most appropriate to the facts in the charge and the stages of the investigation.*

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.    **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2.    **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.    **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.    **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.    **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.



Assistant General Counsel
Legal Department
8687 United Plaza Blvd.
Baton Rouge, La. 70809

Phone: 800.288.6503 (ext. 2636)
Fax: 225.215.6375
Email: mmarx@turner-industries.com

September 8, 2020

Darrin Miller
242 East Haig Street
Prichard, AL 36610

## Re:   Turner Dispute Resolution Agreement

Dear Mr. Miller:

We are in receipt of a copy of the EEOC's letter announcing the dismissal and notice of rights regarding your Charge filed with the EEOC naming Turner Industries Group, LLC, as respondent.

This letter is to remind you that should you choose to pursue those claims further, you and Turner are mandatorily bound by the Turner Dispute Resolution Agreement. A copy of the Turner Dispute Resolution Agreement is enclosed for your reference. Accordingly, please be advised that any and all employment related claims will be governed by mandatory arbitration through the American Arbitration Association under the Turner Dispute Resolution Agreement.

Cordially,

Max C. Marx

MCM/mmf

Enclosure: Turner Dispute Resolution Agreement

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To:  **Darrin Miller**<br>242 East Haig Street<br>Prichard, AL 36610 | From:  **Mobile Local Office**<br>63 S Royal Street<br>Suite 504<br>Mobile, AL 36602 |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 425-2019-00636 | **ARLENE A. GORCEY,**<br>Investigator | (251) 690-2177 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Erika LaCour*

**Erika LaCour,**
**Local Office Director**

09-01-2020

*(Date Mailed)*

Enclosures(s)

cc:   **Max C. Marx, Esq.**
**Assistant General Counsel**
**TURNER INDUSTRIES GROUP, L.L.C.**
**Legal Department**
**8687 United Plaza Boulevard**
**Baton Rouge, LA 70809**

Enclosure with EEOC
Form 161 (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS   --   **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date.** Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to
consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell
him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely
manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as
indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate
State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of
your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the
charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include
any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters
alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in
some cases can be brought where relevant employment records are kept, where the employment would have
been, or where the respondent has its main office. If you have simple questions, you usually can get answers from
the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint
or make legal strategy decisions for you.

### PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

### ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above,
because such requests do not relieve you of the requirement to bring suit within 90 days.

### ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge
file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*



# TURNER INDUSTRIES

## <u>Notice to All Job Applicants</u>

Individuals ["Job Applicant"] who wish to be considered for employment by, or who wish to be employed by Turner Industries Group, L.L.C., Turner Specialty Services, L.L.C., Turner Industrial Maintenance, L.L.C., and/or any other applicable related or affiliated companies (collectively "the Company") must read and sign the following Dispute Resolution Agreement before submitting an application for employment. *<u>EXECUTION OF THE BELOW AGREEMENT DOES NOT GUARANTEE EMPLOYMENT WITH THE COMPANY</u>*. You may stop the application process at this point and take the time to review these materials further if you desire to do so. You must, however, complete this Agreement, along with your application, if you wish to continue the application process and if you wish to be employed by the Company. <u>All Job Applicants hired on or after January 1, 2017, are required to agree to the Dispute Resolution Agreement below</u>[1]. If hired, you will be bound to it in accordance with applicable state law.

The Company's success is founded in great part on the abilities, dedication, and efforts of all of its Job Applicants/Eventual Employees. The Company has always treated its Job Applicants/Eventual Employees with respect, and recognizes each Eventual Employee as an important individual who contributes to the Company's success. We hope that workplace problems or disputes can be resolved quickly and fairly, usually through informal discussions between you and your supervisor. If you are not comfortable with taking your complaint to your supervisor, then you should contact the appropriate Human Resources manager, or you may call toll free at 1-800-288-6503, and ask for the Employee Relations Department. When internal procedures do not resolve the issue, the Company has prepared and implemented an alternative to traditional litigation in the form of the below Dispute Resolution Agreement with all employees. These dispute resolution procedures in the Dispute Resolution Agreement will lead to a meaningful and fair result and will reduce the delay and costs associated with traditional litigation.

The Company expressly forbids any retaliation against any Job Applicant/Eventual Employee who has participated – or because he or she has participated -- in these dispute resolution procedures. If you feel you have been the victim of any retaliation, please immediately report that to your supervisor, the Human Resources Department, the Job Applicant hotline number [1-800-626-1735] or the Employee Relations Department. The Arbitrator shall not have the authority to add to, amend, or modify existing law or alter your at-will employment status. While the Dispute Resolution Agreement establishes a mandatory program for resolving workplace disputes, <u>if hired</u>, it does not change your "at-will" employment status, or to the Company's right to discipline or terminate you or any employee.

## <u>Dispute Resolution Agreement ("DRA")</u>

Both Job Applicant and the Company agree to resolve any and all claims, disputes or controversies arising out of or relating to Job Applicant's employment with the Company exclusively by binding arbitration to be administered by the American Arbitration Association (the "AAA") pursuant to its Employment Arbitration Rules and Mediation Procedures (the "Rules"). The Rules are available on the AAA website as amended from time to time (<u>www.adr.org</u>). In addition, copies of the Rules are available from the Human Resources Department and/or the Employee Relations Department. An example of some, but not all, of the types of claims covered by this DRA are: unpaid wages, overtime, or other compensation; discrimination or harassment on the basis of race, sex, age, national origin, religion, disability or any other protected class; breach of contract; retaliation (including without limitation workers' compensation retaliation actions); wrongful discharge; claims regarding benefits and benefit plans [unless a separate mandatory dispute resolution procedure is provided]; common law or tort claims such as defamation; and claims arising under any statutes or regulations applicable to Job Applicants/Eventual Employees or applicable to the employment relationship, such as the Civil Rights Acts (Title VII and § 1981), the Age Discrimination in Employment Act, the Americans with Disabilities Act (as amended) (both Title I and Title III), the Family and Medical Leave Act, the Pregnancy Discrimination Act, the Genetic Information Nondiscrimination Act, the Equal Pay Act, the Uniformed Services Employment and Reemployment Act, the National Labor Relations Act, the Occupational Safety and Health Act, the Employee Retirement Income Security Act, and the Fair Labor Standards Act; as well as all claims arising under any and all state and/or local employment law[s].

<u>Claims not covered by this DRA</u> are claims or actions i.) seeking benefits pursuant to state workers' compensation or unemployment compensation statutes or regulations, ii.) for employment benefits which are subject to mandatory litigation and/or

---

[1] Any and all previous versions/iterations of any dispute resolution procedures remain in effect until December 31, 2016 [the "Pre-2017 DRA"]. Any claim arising on or prior to December 31, 2016, shall be subject to the Pre-2017 DRA.

1

dispute resolution provisions contained in the applicable employment benefit plan document, iii.) to compel arbitration or to enforce an arbitrator's award under this DRA, and/or iv.) by the Job Applicant/Eventual Employee and/or the Company for temporary and/or preliminary injunctive relief, or such other emergency injunctive and/or equitable relief until such time that an Arbitrator may be appointed. Any such temporary and/or injunctive relief entered by a court shall remain binding on the parties until such further action by the duly appointed Arbitrator. This DRA does not affect or limit a Job Applicant's right to file a charge with a federal, state or other governmental administrative agency, including but not limited to the Equal Employment Opportunity Commission, the National Labor Relations Board, the United States Department of Justice, and/or the United States Department of Labor.

Except as expressly provided herein, the Company and the Job Applicant expressly waive all rights to a trial in a court by judge, magistrate, and/or jury on all claims between them. Each Job Applicant's concerns are unique to him or her. Because this DRA is intended to resolve the particular dispute as quickly as possible, the Arbitrator shall not have the authority to consolidate or join the claims of other Job Applicants/Eventual Employees into a single proceeding, to fashion a proceeding as a class, collective or representative action, or to award relief to a class or group of Job Applicants/Eventual Employees. Any claim[s] on behalf of other Job Applicants/Eventual Employees will be maintained and decided under the AAA rules as individual claims. In addition, Job Applicant and the Company waive, renounce, and relinquish any and all rights, claims, and/or privileges to form, constitute, or join a class or collective action to be adjudicated pursuant to this DRA, or to bring or institute any arbitral claim pursuant to this DRA on behalf of any class or collection of individuals.

To the extent practical, and subject to available venues with the AAA, the arbitration shall be held in or near the city in which the Job Applicant has established a domicile, or was last employed by the Company. The Job Applicant or Company may appeal a decision to the United States District Court for the district in which the Arbitration was brought; however any such appeal rights are and shall be limited pursuant to 9 U.S.C. § 10(a) of the Federal Arbitration Act. Any such appeal shall be filed within forty-five (45) days of an arbitrator's award, decision, or ruling.

Arbitrators shall i.) have substantial knowledge and experience in the area of the employment related law subject to the arbitration; and ii.) shall been previously appointed and accepted as an arbitrator in a similar AAA sanctioned arbitration proceeding. The Job Applicant and Company shall pay administrative filing fees in accordance with the rules of the AAA which pertain to employment disputes. Under no circumstances shall the Company or the Job Applicant be required to pay any attorneys' fees incurred by the other party, unless ordered to do so pursuant to an arbitration award.

Consistent with the expedited nature of Arbitration, the Arbitrator shall have the authority to and shall expeditiously consider and rule on dispositive motions such as motions to dismiss or motions for summary judgment in accordance with the standards generally applicable to Rules 12 and 56 of the Federal Rules of Civil Procedure. The Arbitrator shall issue detailed written reasons in support of any ruling on dispositive motion(s). All written reasons issued in connection with DENIALS of dispositive motions shall be served on the parties not less than twenty-one (21) days before any scheduled arbitration hearing. The Arbitrator may issue subpoenas to compel the attendance of witnesses and the production of documents. The Arbitrator shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability, of this DRA, including, but not limited to, any claim that any part of this DRA is unenforceable, void, or voidable. Discovery will be generally limited in any arbitration under this DRA. Absent a showing of substantial need for additional discovery, the Arbitrator shall limit discovery to 25 interrogatories and document requests combined per party and 2 depositions per party.

Subject to administration and scheduling issues as handled by the AAA, it is anticipated that the arbitration hearing shall be held within 180 days of the Arbitrator's appointment. Job Applicant and the Company agree that this DRA shall be enforceable pursuant to and interpreted in accordance with the provisions of the Federal Arbitration Act, and, to the extent applicable, the substantive laws of the state where the claim arose. Any party who initiates an arbitration with the AAA shall notify the other party directly and promptly. Notice to the Job Applicant shall be to his or her last known address as reflected on his or her employment application. Notice to the Company shall be to the Corporate General Counsel, Turner Industries Group, LLC, 8687 United Plaza Blvd., Baton Rouge, Louisiana 70809.

If an Job Applicant or the Company files a lawsuit in court rather than a demand for arbitration under the DRA within the time allowed by applicable law for the filing of a lawsuit, and thereafter is ordered by the court to submit the dispute to arbitration in accordance with this DRA, the Job Applicant/Company must initiate arbitration within 120 days of the date the court's order becomes final, unless the court sets a longer or shorter deadline. Failure to file the arbitration demand within the requisite time period will bar the claim.

2

If any provisions of the Rules or of this DRA are determined by the Arbitrator or by any court of competent jurisdiction to be unlawful, invalid, or unenforceable, such provisions shall be severed or modified so that the DRA or the Rules may be enforced to the greatest extent permissible under the law. All remaining terms shall continue in full force and effect.

The arbitral proceedings and Arbitrator's decision shall be confidential. Neither the Job Applicant nor Company may publicly disclose the terms of any arbitral award unless: i) agreed to in writing by the other party, ii) subpoenaed by a court to testify, iii) required by law as communication to the Internal Revenue Service or other applicable government entity, or iv) necessary to enforce or collect on the arbitral decision or award in a filing with a court of competent jurisdiction. The Arbitrator may issue protective orders in response to a request by either party or by a third-party witness. Such protective orders may include, but are not limited to, sealing the record or the arbitration hearing, in whole or part, to protect the privacy, trade secrets, proprietary information, and/or other legal rights of the parties or the witnesses.

For the purposes of the scope of the DRA, "Company" shall include parent, subsidiary and related companies, specifically including Turner Industries Group, L.L.C. ["TIG"], Turner Specialty Services, L.L.C. ["TSS"], Turner Industrial Maintenance, L.L.C. ["TIM"], and any applicable subsidiary companies, related companies, trade names, and alleged joint employers or any other individual or corporate co-respondents or defendants, as well as their respective officers, directors, managers, and employees (current and former).

Job Applicant and Company understand that any and all claims and disputes covered by this DRA must be arbitrated against the other party and that neither party may file a lawsuit in any court in regard to any such claims or disputes. If the Job Applicant or Company files a lawsuit for any such claims or disputes, including without limitation for those arising out of the Job Applicant's employment, the other party may use this DRA to request a court to dismiss the lawsuit and require the party to participate in binding arbitration as provided in this DRA. The dispute resolution procedures described in this DRA shall survive the termination and/or cessation of the Job Applicant's employment. This DRA supplements matters covered in the Company's employment handbook and other policies provided or applicable to the Job Applicant.

This DRA may be modified or terminated by the Company after 30 days' prior written notice to Job Applicant/Eventual Employee. Any modifications or termination shall be prospective only and shall not apply to any claims or disputes that are pending in any arbitration or that have been initiated by either party.

This DRA shall be governed by the laws of the state where any arbitration is required to be filed, exclusive of conflict or choice of law rules. The parties acknowledge that this DRA evidences a transaction involving interstate commerce. Notwithstanding the provision in the preceding sentence with respect to applicable substantive law, any arbitration conducted pursuant to the terms of this DRA shall be governed by the Federal Arbitration Act (9 U.S.C., Secs. 1-16).

*Special Note: This DRA and the Rules referenced above are important documents that affect Job Applicant's and the Company's legal rights. Job Applicant should read and understand them, and Job Applicant may wish to consult with private legal counsel at his or her own expense before continuing with the hire-in process, which will evidence the Job Applicant's acceptance of this DRA and the Rules.*

3